**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| BLACK MAGIC, LLC d/b/a BLACK MAGIC CAFE, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC.; HARTFORD FIRE INSURANCE COMPANY; and TWIN CITY FIRE INSURANCE COMPANY,<br><br>Defendants. | C/A No.: 2:20-cv-1743-BHH<br><br><br>**RESPONSE IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS** |

Plaintiff Black Magic, LLC d/b/a Black Magic Café, on behalf of itself and all others similarly situated, ("Black Magic") submits this Memorandum in Response to Defendants The Hartford Financial Services Group, Inc.'s ("HFSG") and Hartford Fire Insurance Company's ("HFIC") motion to dismiss Black Magic's Amended Class Action Complaint [Dkt. No. 11] (the "AC") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6) ("MTD"). [Dkt. No. 14]. For the reasons set forth below, Black Magic respectfully requests this court deny such drastic, final relief during the infancy of this litigation.

**Summary of Black Magic's Allegations and Facts of Record**

Black Magic operates two restaurants in Charleston, South Carolina. (AC, ¶ 15). On March 17, 2020, Governor Henry McMaster signed an Executive Order in response to the novel coronavirus (SARS-CoV-2) and the disease caused by this virus – COVID-19 (the "Virus"). (AC, ¶¶ 17-18). This Executive Order, and other government regulations at the state and local level, closed Black Magic for dine-in service. (AC, ¶ 27). Black Magic's revenue plummeted. *Id*.

Black Magic purchased a Hartford "Spectrum Business Owner's Policy" bearing policy Number 22 SBA AD5441 DV with effective dates of July 16, 2019 to July 16, 2020 (the "Policy"). (AC, ¶¶ 26-27). A copy of the Policy is attached as **Exhibit A** and incorporated herein by reference. Defendant Twin City Fire Insurance Company ("Twin City") is listed as the "Insurer" on the Policy's "Spectrum Policy Declarations" page (Form SS-00-02-12-06) (AC, ¶ 31; Ex. A, p. 15).

The Policy does not contain the infamous Form CP-01-40-07-06 ("EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA") (the "Virus Exclusion"), which is found in the majority of small business, commercial property insurance policies in South Carolina and throughout the country. (AC, ¶ 41). The Virus Exclusion, developed in the early 2000s in the wake of the SARs pandemic, comprehensively bars coverage for virus-related claims, including business income interruption claims. (AC, ¶ 41). The Virus Exclusion is a standard ISO policy form used by most insurance companies around the country. Observers have commented that the policies containing the Virus Exclusion likely do not cover business income losses directly or indirectly caused by the Virus and government regulations issued in response.[1]

Remarkably, the Policy does not contain the Virus Exclusion. Instead, the Policy contains Form SS-40-93-07-05 ("LIMITED FUNGI, BACTERIA, OR VIRUS COVERAGE") (the "Virus Coverage Form"). (AC, ¶ 43; Ex. A, pp. 132-134). The Virus Coverage Form, a unique and propriety Hartford coverage form, explicitly provides coverage for virus related losses, including business income interruption claims, up to $50,000.00 per insured location. (AC, ¶ 48; Ex. A, pp. 17, 19). The Virus Coverage Form was included in the "Restaurant Stretch" (Form SS-04-11) purchased by Black Magic. (AC, ¶¶ 30, 44; Ex. A, pp. 17, 19, 28, 97).

---

[1] https://www.washingtonpost.com/business/2020/04/02/insurers-knew-damage-viral-pandemic-could-wreak-businesses-so-they-excluded-coverage/

The Hartford website[2] markets the "Spectrum Business Owner's Policy" and myriad, proprietary "Stretch" endorsements as "ENHANCED FOR MORE COVERAGE," stating that "[f]or years, our Stretch endorsements have been among the best property broadening endorsements on the market." (AC, ¶ 30). Black Magic alleges the Virus Coverage Form is included in the "Restaurant Stretch" because of certain "unique issues facing those in the food and beverage industry including, but not limited to, the potential for disease transmission from sustained and close human to human contact, which is part and parcel of food service." (AC, ¶ 44). Black Magic paid an extra premium for this enhanced, custom coverage provided by the Hartford. (AC, ¶ 43).

On March 17, 2020, Black Magic closed its doors due to the Executive Order and the ubiquitous presence of the Virus throughout Charleston County. (AC, ¶ 25). On March 24, 2020, Black Magic filed a business income interruption claim. (AC, ¶ 48). On March 31, 2020, the "Hartford Cat Claim Office" denied Black Magic's claim by form letter, stating the claim did not involve "direct physical loss" – an undefined term in the Policy. (AC, ¶¶ 49, 50). Another denial letter from the Hartford was issued on April 10, 2020. (AC, ¶ 52). Copies of the Claim Denial Letters are attached as **Exhibit B.**

Based on the foregoing, Black Magic filed the instant lawsuit against Twin City, HFIC, and HFSG, asserting breach of contract and declaratory judgment claims. Black Magic seeks to represent a class of similarly situated policy holders who (1) purchased a Hartford "Spectrum Business Owner's Policy" with the Virus Coverage Form and (2) were denied business income interruption claims due to the Virus.

---

[2]https://thehartford.my.salesforce.com/sfc/p/#300000007NS7/a/0c0000009xRl/IR5Gt1E4SpA1BwDkSK4uqeU2.6GTUBuoka2_W57n0OQ

The MTD seeks dismissal of HFSG and HFIC, claiming the absence of privity with Black Magic. Therefore, according to HFSG and HFIC, Magic lacks standing and this Court lacks jurisdiction as to these entities.

The AC contains well-pled allegations supporting privity between Black Magic, HFSG, and HFIC. While Twin City is listed as the "Insurer" on the Policy's "Spectrum Policy Declarations" page (Form SS-00-02-12-06) (AC, ¶ 31; Ex. A., p. 15), the Policy is replete with references to "The Hartford." As discussed in more detail below, this gives rise to, at least, a genuine issue of material fact as to whether HFSG and HFIC have privity with Black Magic. For example, the Policy refers to itself as "Your Hartford Policy," it is signed "Your Hartford Team," and the Hartford logo appears throughout the Policy. (AC, ¶¶ 32-33; Ex. A, p. 2). Moreover, the claims denial correspondence was controlled entirely by the Hartford entities. For example, the March 31, 2020 claim denial letter, from the "Hartford Cat Claim Office," states, "[t]he foregoing should not be construed as a waiver of any of **Hartford's rights and defenses** under your policy number." (AC, ¶ 43; Ex. B, pp. 1-2) (Emphasis added).

Even if HFSG and HFIC are deemed to lack privity with Black Magic, which is denied, the AC contains sufficient allegations supporting independent declaratory judgment claims against these entities. The "Spectrum Business Owner's Policy" and the Virus Coverage Form are unique, proprietary, and standardized insurance products designed, marketed, and sold by HFSG and HFIC through its subsidiaries including, but not limited to, Twin City. (AC, ¶¶ 27, 45, 46).

In 2019, both HFSG and HFIC, independent of Twin City, met with representatives from the South Carolina Department of Insurance ("SCDOI") and made the necessary regulatory filings required for the unique, proprietary, and standardized insurance policies at issue in this case to be

legally marketed and sold in South Carolina, mere months before Black Magic purchased the Policy.

On or about March 20, 2019, Lisa Stankus, Spectrum Product Specialist, Spectrum-Small Commercial, filed an "Explanatory Memorandum" with the South Carolina Department of Insurance ("SCDOI") through the SERFF filing system (the "Explanatory Memorandum"). A copy of the Explanatory Memorandum is attached as **Exhibit C** and incorporated herein by reference. The Explanatory Memorandum states that "[w]ith this filing, Hartford Underwriters Insurance Company is introducing a new Spectrum Businessowners policy package to be made available for new business submissions processed on or after June 08, 2019." (Ex. C, p. 1). It goes on to state "[t]his policy for Small Business risks is being filed in all 48 states including District of Columbia **and will replace our existing new business program in the Twin City Fire Insurance Company**… ." (Emphasis added). *Id*. The Explanatory Memorandum acknowledges a meeting with SCDOI staff on February 22, 2020, stating "we appreciate your partnership and acknowledgment of our extended implementation pilot plan. We look forward to your review of this new product and welcome any inquiries to be directed to Lisa Stankus@860-547-3104 or Kate Daly@ 860-547-2262." The letter closes with the following signature block, which explicitly references HFSG:



(Emphasis and Highlights Added).

The specific "Spectrum Business Owner's Policy" forms referenced in the Explanatory Memorandum were filed with the SCDOI through the SERFF system on March 20, 2019 via SERFF Tracking Number HART-131865937 (the "SERFF Filing"). A copy of the SERFF Filing is attached as **Exhibit D** and incorporated herein by reference. The SERFF Filing contains numerous unique, proprietary, and standardized insurance forms including, but not limited to, "Limited Fungi, Bacteria or Virus Coverage." (Ex. D, p. 54). A copy of this specific coverage form, downloaded from the SERFF website, is attached as **Exhibit E** and incorporated herein by reference. This form is substantially similar to the Virus Coverage Form. (Ex. E., pp. 1-2). The SERFF Filing reveals a "Disposition Date" of April 4, 2019 and a "Disposition Status" of "Use and File as Amended." (Ex. D., pp. 1-2). These filings and approvals were accomplished prior to Black Magic's purchase of the Policy.

If nothing else, HFSG and HFIC are interested and necessary parties in resolving the disputed issues in this case given their direct involvement in development, marketing, selling, and obtaining regulatory approval for the insurance policy forms at issue in this case. HFSG and HFIC

have and will face thousands of substantially similar business income interruption claims from insureds with policy language identical to Black Magic's in South Carolina and beyond.

## Argument

### A. Black Magic possesses Article III standing to assert its breach of contract and declaratory judgment claims against HFSG and HFIC.

Dismissal for lack of standing is a legal question for the Court to decide under Fed. R. Civ. P. 12(b)(1). *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). To demonstrate Article III standing, a plaintiff must show that: "(1) ... he or she suffered an actual or threatened injury that is not conjectural or hypothetical, (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

When seeking a ruling under the Declaratory Judgment Act, plaintiff must also demonstrate standing pursuant to the statute. In such situations, the question becomes "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Miller v. Augusta Mut. Ins. Co.,* 157 Fed.Appx. 632, 6337 (4th Cir. 2005) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S. Ct. 510, 85 L.Ed. 826 (1941)).

The MTD challenges only the second element of the Article III standing test, claiming Black Magic's injury is not traceable to HFSG and HFIC due to lack of privity. HFSG and HFIC do not attempt to argue Black Magic has not suffered an injury, as its business income loss is manifest. Rather, HFSG and HFIC argue Black Magic "has no contract with [HFSG and HFIC] and has not alleged any other harm attributable to them." (MTD, p. 8). HFSG's and HFIC's

traceability argument misapprehends Black Magic's claims and ignores the direct and material connection between these entities and this dispute.

*Breach of Contract Claim*

Black Magic has sufficiently alleged a breach of contract claim against both HFSG and HFIC. The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach. *Branche Builders, Inc. v. Coggins*, 686 S.E.2d 200, 202 (S.C. Ct. App. 2009) (citing *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962)).

In support of the contention that Black Magic lacks standing, HFSG and HFIC assert that "neither [HFSG nor HFIC] is a party to the insurance contract at issue." (MTD, p. 2). This conclusory statement ignores language to the contrary in the Policy, statements in the denial letter, and Black Magic's specific allegations in the AC – all of which, taken together and viewed in a light most favorable to Black Magic, give rise to genuine issues of material fact as to whether these entities are in privity with Black Magic.

Black Magic's allegations supporting its standing to sue HFSG and HFIC must be carefully examined, but they also must be accepted as true and interpreted in a light most favorable to Black Magic. "For purposes of ruling on a motion to dismiss for want of standing, the trial ... court[ ] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) ("when a defendant asserts that the complaint fails to allege sufficient facts to support subject[-]matter jurisdiction, the . . . court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged [in the complaint and any additional materials].").

Although Twin City is listed as the "Insurer" on the Policy's "Spectrum Policy Declarations" page (Form SS-00-02-12-06), (AC, ¶ 31), there are extensive and materially significant references to "Hartford" throughout the Policy. These give rise to a genuine issue of material fact as to whether or not a contractual relationship exists between Black Magic, HFSG, and HFIC.

These include, but are not limited to, the following:

- In a letter included with and incorporated into the Policy, Black Magic is referred to as "a loyal customer of **The Hartford**, " the Policy is referred to as "**Your Hartford Policy**," it is signed "Your **Hartford** Team," and the **Hartford logo** sits atop the upper right-hand corner. (AC, ¶¶ 32-33; Ex. A, p. 2) (Emphasis added).

- A notice accompanying the Policy states: "Thank you for selecting **The Hartford** for your business insurance needs." (Ex. A., p.3) (Emphasis added).

- The cover page for the Policy (Form SS-00-01-03-14) denotes the Policy as a "Spectrum Business Owner's Policy" and contains a large **Hartford logo** on it. (AC, ¶ 34; Ex. A, p. 5) (Emphasis added)

- The Policy's "Spectrum Policy Declarations" page (Form SS-00-02-12-06) states "This insurance is provided by the stock insurance company of **the Hartford Insurance Group** shown below." It goes on to state: "IN RECOGNITION OF THE MULTIPLE COVERAGES INSURED WITH THE **HARTFORD**, YOUR POLICY PREMIUM INCLUDES AN ACCOUNT CREDIT." (AC, ¶ 35; Ex. A, p. 15) (Bold and Underlined Emphasis Added, Capitalization in original)

- All of the coverage forms in the Policy contain a copyright symbol, a date, and the phrase "**The Hartford**." (Emphasis added)

The references to "The Hartford" do not stop with the Policy. When Black Magic submitted its business interruption claim, the denial letter came not from "Twin City" – but from the Hartford. Paragraph 50 of the AC provides the following specific account of these communications:

The March 31, 2020 denial letter is from "The **Hartford** Cat Claim Office," a **Hartford logo** appears on the letter, and the letter was signed by Joel Gonzalez. Mr. Gonzalez's email address has an **"@thehartford.com**" extension. The letter states, among other things: "If you believe there are additional facts **Hartford**

should consider, please let us know, and we will reopen your claim." The letter closes with the following statement: "The foregoing should not be construed as a waiver of any of **Hartford's** rights and defenses under your policy number, and **Hartford** specifically reserves its right to modify or supplement this review of coverage based upon any additional information which it may obtain and/or any other grounds which may appear."

(Ex. B, pp. 1-2) (Emphasis added).

Given the foregoing references, it is not surprising Black Magic believed its insurer to be "The Hartford." (AC, ¶ 37). Regardless of Black Magic's state of mind, the documents at issue in this insurance coverage dispute give rise to a genuine issue of material fact whether HFSG and HFIC have a contractual relationship with Black Magic. These disputed factual issues must be liberally construed in Black Magic's favor on a motion to dismiss. *Kerns v. United States, supra.*

HFSG and HFIC attempt to hand wave away these myriad references to Hartford by suggesting "The Hartford" is "simply … a trade name." (MTD, p. 14). HFSG and HFIC seem to be challenging the notion that these entities are the "Hartford" repeatedly referenced the Policy and correspondence with Black Magic. This conclusory statement is insufficient for dislodging this Court's jurisdiction to hear this case.

As mentioned above, the Policy describes itself as "Your Hartford Policy" – not your Twin City policy. Similarly, the denial letter speaks to "Hartford's rights and defenses" under the Policy – not Twin City's rights. Black Magic seeks not to sue a trade name; rather, it is Black Magic's position, as alleged in the AC, that the myriad references to "Hartford" correspond to the actual entities HFSG and HFIC. This is a reasonable allegation, considering the parent-subsidiary relationship between these entities, and these entities direct role in designing, marketing, selling, and securing regulatory approval for the insurance products germane to this dispute.

Contrary to the MTD, Black Magic *does not* allege HFSG and HFIC have privity *merely* because of the parent-subsidiary relationships. Rather, HFSG's and HFIC's connection to the

Policy, Black Magic, and South Carolina are evidenced by actual langue in the Policy and the conduct of the Hartford in denying Black Magic's claim. Whether and to what extent these entities are, in fact, actual parties to the Policy will depend on a close, factual analysis into the business practices and conduct of these entities in discovery. However, it is abundantly clear this issue cannot be resolved based on HFSG and HFIC conclusory statements, especially at this early stage in the litigation.

Ultimately, this Court need not resolve these issues with finality in resolving the MTD. HFSG and HFIC retain the right, throughout this litigation, to contest subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Resolving these complex issues and confirming the relationship between HFSG, HFIC, the Policy, and Black Magic is for discovery.

*Declaratory Judgment Claim*

Even if Black Magic lacks standing to assert a breach of contract claim against HFSG and HFIC, which is denied, it has standing to assert a claim for declaratory relief against these Hartford entities – both individually and on behalf of the putative class. This is due to the unique level of ownership and control HFSG and HFIC exercise over the policy forms in this case as well as the claims handling process. Recognizing Black Magic's standing in this regard will also serve numerous prudential concerns, as outlined below.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "In essence, for a district court to have jurisdiction to issue a declaratory judgment, two conditions must be satisfied. First, the dispute must be a 'case or controversy' within the confines of Article

III of the United States Constitution — the 'constitutional' inquiry. Second, the trial court, in its discretion, must be satisfied that declaratory relief is appropriate — the 'prudential' inquiry." *White v. National Union Fire Ins. Co.*, 913 F. 2d 165, 167 (4th Cir. 1990).

"The test for a 'case or controversy,' the constitutional inquiry, is whether the dispute 'is definite and concrete, touching the legal relations of parties having adverse legal interests.'" *Id*. (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937)). "'It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Id*. "The question is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. at 168 (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). "Two questions should be asked when a court makes such a prudential decision: '(1) whether the judgment will 'serve a useful purpose in clarifying the legal relations in issue'; or (2) whether the judgment will 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id*. at 168 (citations omitted).

The AC's allegations, viewed in a light most favorable to Black Magic, reveal a case or controversy between Black Magic on one side and HFSG and HFIC on the other. This case boils down to a dispute over the interpretation of The Spectrum Business Owner's Policy and the Virus Coverage Form. As previously discussed, HFSG and HFIC – not Twin City – designed, marketed, and sold these unique, proprietary, and standardized insurance products to Black Magic and other businesses in South Carolina. (AC, ¶¶ 27, 45, 46). Moreover, HFSG and HFIC – not Twin City –

filed the Explanatory Memo, made the SERFF filing with the SCDOI, and met with South Carolina regulators over the specific policy forms at issue in this case just months before Black Magic purchased them. HFSG and HFIC are not remote spectators to this coverage dispute – they are direct, active participants. Surely, HFSG and HFIC have an interest in resolving the instant coverage dispute, which not only involves Black Magic, but hundreds – if not thousands – of identical policy holders who submitted business income interruption claims as a result of the Virus. Therefore, Black Magic has a direct interest in seeking a declaratory judgment against HFSG and HFIC.

HFSG and HFIC also controlled Black Magic's claim handling and denial. (AC, ¶¶ 49-53). The claim denial letter received by Black Magic states: "[t]he foregoing should not be construed as a waiver of any of **Hartford's** rights and defenses under your policy number, and **Hartford** specifically reserves its right to modify or supplement this review of coverage based upon any additional information which it may obtain and/or any other grounds which may appear." (AC, ¶ 50) (Emphasis added). The claim denial letter did not come from Twin City. Notwithstanding their authorship and control over the policy forms at issue, HFSG and HFIC have stepped in to play a direct role in the claims handling process. This further supports this Court's recognition of a "case or controversy" between the parties and advances prudential concerns as well. Without securing declaratory relief against HFSG and HFIC, Black Magic cannot obtain complete, binding relief against all applicable and necessary parties under Fed. R. Civ. P. 19(a).[3]

---

[3] HFSG and HFIC are interested and necessary parties because their unique, proprietary, and standardized policy forms are at the heart of this dispute. Rule 19(a)(1)(B)(i) (necessary party status conferred if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.").

From a prudential standpoint, allowing Black Magic to maintain its declaratory judgment claims against HFSG and HFIC will advance the interests of finality not only as to Black Magic's claim, but thousands of identical, business income interruption claims involving the same unique, proprietary, and standardized policy forms designed, marketed, and sold by HFSG and HFIC, through its various subsidiaries including, but not limited to, Twin City. Black Magic seeks to represent a class of similarly situated insureds with these identical policy forms. (AC, ¶ 61). It matters not whether these other policyholders have a connection with Twin City or some other Hartford subsidiary. The common thread uniting the putative class is the purchase of a "Spectrum Business Owner's Policy" containing the Virus Coverage Form, both of which flow from HFSG and HFIC, not any particular "writing company." It would be the epitome of elevating form over substance to require separate classes for each Hartford "writing" subsidiary, even though all Virus-related business income interruption claims deal with identical policy forms emanating from HFSG and HFIC and control exerted by these entities over the claims handling processes. For these reasons, and despite their ardent protestations, HFSG and HFIC clearly have an interest in the resolution of this coverage disputes, as it implicates not only their relationship with Black Magic, but untold numbers of other insureds. (AC, ¶ 83). Recognizing Black Magic's standing to assert claims for declaratory relief as to HFSG and HFIC is the first step to avoids the need for duplicative litigation and conflicting and inconsistent judicial interpretations.

For these reasons, Black Magic's declaratory judgment claims against HFSG and HFIC should not be dismissed.

**B. The AC contains sufficient allegations to sustain this Court's exercise of personal jurisdiction over both HFSG and HFIC.**

Plaintiff bears the ultimate burden of proving the existence of personal jurisdiction by a preponderance of the evidence. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989). "But when,

as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a *prima facie* showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* In that situation, "[t]he court must construe all relevant pending allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

A district court may exercise personal jurisdiction "if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir.1993). In South Carolina, personal jurisdiction is governed by the state's long-arm statute, S.C.Code Ann. § 36-2-803 (2005). The South Carolina Supreme Court has interpreted the long-arm statue to extend to the outer *limits* of constitutional due process. *Cockrell v. Hillerich, & Bradsby Co.,* 363 S.C. 485, 491, 611 S.E.2d 505, 508 (2005); *Meyer v. Paschal,* 330 S.C. 175, 181, 498 S.E.2d 635, 638 (1998). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." *Cockrell,* 363 S.C. at 491, 611 S.E.2d at 508 (citing *Moosally v. W.W. Norton & Co., Inc.,* 358 S.C. 320, 329, 594 S.E.2d 878, 883 (Ct.App.2004)).

The Fourth Circuit employs a three-part inquiry to determine whether the exercise of specific jurisdiction over a party comports with due process. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). This test looks to the following: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether

the exercise of personal jurisdiction would be constitutionally reasonable." *Id*. (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

"[T]he court must find that the defendant has established 'minimum contacts' with the forum state by 'purposefully avail[ing itself] of the privilege of conducting business under the [state's] laws.'" *ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376 (4th Cir. 2012) (citing *Consulting Eng'rs*, 561 F.3d at 278). "A defendant's actions that are directed at the forum state in only 'a random, fortuitous, or attenuated way' are insufficient to support jurisdiction." *Id*. (citation omitted). "Thus, the Supreme Court has rejected the exercise of jurisdiction where a defendant has merely placed a product into the stream of commerce foreseeing that it might ultimately reach the forum state." *Id*. (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 131 S.Ct. 2780, 2785, 180 L.Ed.2d 765 (2011) (plurality opinion)). "But where a defendant has 'targeted the forum' with its goods, sufficient contacts exist." *Id*.

Constitutional reasonableness, protects a party from "litigation 'so gravely difficult and inconvenient' that [the] party unfairly is at a 'severe disadvantage' in comparison to [its] opponent." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). To defeat jurisdiction on this basis, a defendant must establish, despite the presence of minimum contacts, "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. at 477, 105 S.Ct. 2174.

In ruling on a motion to dismiss for lack of personal jurisdiction, the court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, without converting the motion to dismiss into a motion for summary judgment. *Magic Toyota, Inc. v. Se.*

*Toyota Distribs., Inc*., 784 F. Supp. 306, 310 (D.S.C. 1992). In reviewing a motion to dismiss, the Fourth Circuit approves of taking judicial notice of matters of public record. *Hall v. Virginia,* 385 F.3d 421, 424 (4th Cir.2004) (noting it was proper during Rule 12(b)(6) review to consider "publicly available [statistics] on the official redistricting website of the Virginia Division of Legislative Services.") (citing *Papasan v. Allain,* 478 U.S. 265, 268 n. 1, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)) ("Although this case comes to us on a motion to dismiss ..., we are not precluded in our review of the complaint from taking notice of items in the public record....").

HFSG and HFIC attacks this Court's personal jurisdiction by suggesting Black Magic's claims are based solely on the parent-subsidiary relationship between HFSG, HFIC, and Twin City. This misapprehends the scope and nature of Black Magic's allegations, as previously discussed. While "it is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity," *Saudi v. Northrop Grumman Corp*., 427 F.3d 271, 276 (4th Cir. 2005) (citations omitted), the Fourth Circuit has held that personal jurisdiction over a parent corporation is appropriate "if the parent exerts considerable **<u>control</u>** over the activities of the subsidiary." *Mylan Labs., Inc. v. Akzo, N.V*., 2 F.3d 56, 61 (4th Cir. 1993) (Emphasis added). In this case, this "control" element supports this Court's exercise of personal jurisdiction over HFSG and HFIC.

HFSG and HFIC have more than "minimal contacts" with South Carolina because they exercise not just control, <u>but complete control,</u> over Twin City's insurance business in South Carolina. Black Magic alleges the unique, proprietary, and standardized insurance products at issue in this case are designed, marketed, and sold by HFSG and HFIC through its subsidiaries including, but not limited to, Twin City in South Carolina. (AC, ¶¶ 27, 45, 46). Black Magic further alleges HFSG and HFIC exercise complete control over the claims process. (AC, ¶¶ 49, 50). Finally, Black

Magic respectfully requests this Court take judicial notice of certain SCDOI public filings, namely the Explanatory Memorandum and SERFF Filing, wherein HFSG and HFIC – not Twin City – acknowledge direct (and recent) discussions, meetings, and other interactions with the SCDOI regarding the precise policy forms at the heart of this case. At the end of the day, HFSG and HFIC are directly engaged in the insurance business in South Carolina. This activity directly touches on Black Magic, the Policy, and the disputed coverage issues in this case. These allegations support this Court's exercise of personal jurisdiction over HFSG and HFIC.

Therefore, it is constitutionally reasonable and fair for this Court to exercise personal jurisdiction over HFSG and HFIC. "South Carolina 'has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims.'" *ESAB Group, Inc.*, 685 F.3d at 393 (citing *McGee*, 355 U.S. at 223, 78 S.Ct. 199). While HFSG are HFIC are both foreign corporations (as is Twin City), HFIC is registered to do business with the South Carolina Department of Insurance and both actually do conduct sustained insurance business in this state, as mentioned above. (AC, ¶ 3). Finally, as argued above, Black Magic alleges contractual privity with both HFSG and HFIC based on language in the Policy and the claims handling process. These allegations are more than sufficient to establish specific personal jurisdiction as to both entities under the South Carolina long arm statute, S.C. Code Ann. § 36-2-803 and the relevant case law.

The AC contains sufficient allegations to sustain both specific and general personal jurisdiction over both HFSG and HFIC – especially given the early, pre-discovery stage of this litigation. For these reasons, dismissing HFSG and HFIC on personal jurisdiction grounds is inappropriate at this early stage.

**C. Black Magic has sufficiently pled its breach of contract and declaratory judgment claims against HFSG and HFIC.**

When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir.1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Black Magic's breach of contract claims against HFSG and HFIC are not, as these defendants suggest, predicated entirely on the parent-subsidiary relationship. As mentioned above, Black Magic's breach of contract claim directly alleges that HFSG and HFIC are contracting parties with Black Magic due to the myriad references to the "Hartford" in the Policy, the denial letter, and elsewhere. As such, Black Magic has sufficiently alleged the existence of a contract, breach, and damages. (AC, ¶¶ 86-92).

Black Magic has also sufficiently pled declaratory judgment causes of action against HFSG and HFIC. These entities are necessary and interested parties regarding the interpretation of the unique, proprietary, and standardized policy forms at issue in this case – not just with respect to Black Magic but thousands of other similarly situated insureds in South Carolina and around the country. (AC, ¶¶ 79-85).

Given the foregoing, the aforementioned well-pled allegations and claims are sufficient to withstand HFSG's and HFIC's motions to dismiss.

**Conclusion**

Given the foregoing, Black Magic respectfully requests this Court deny the MTD and allow this case to proceed with discovery. Only a full and fair opportunity to participate in discovery will settle the instant disputes over standing and jurisdiction. In the alternative, Black Magic respectfully requests this Court stay its decision on the MTD to allow for jurisdictional discovery. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005).

Respectfully submitted,

**McCULLOUGH KHAN, LLC**

s/Ross A. Appel
Clayton B. McCullough, Fed. Bar # 7120
Ross A. Appel, Fed. Bar # 11434
359 King Street, Suite 200
Charleston, SC 29401
(843) 937-0400
(843) 937-0706 (fax)
clay@mklawsc.com
ross@mklawsc.com

ATTORNEYS FOR PLAINTIFF

July 28, 2020
Charleston, South Carolina