UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BLACK MAGIC, LLC d/b/a BLACK MAGIC CAFE, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC.; HARTFORD FIRE INSURANCE COMPANY; and TWIN CITY FIRE INSURANCE COMPANY,<br><br>Defendants. | C/A NO.: 2:20-cv-1743-BHH<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

Defendants Hartford Financial Services Group ("HFSG") and Hartford Fire Insurance Company ("HFIC") (collectively the "Non-Writing Defendants") respectfully submit this reply memorandum of law in support of their Motion to Dismiss (the "Motion") the Amended Class Action Complaint ("FAC") of Plaintiff Black Magic, LLC d/b/a Black Magic Café ("Plaintiff" or "Black Magic") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

Plaintiff's Opposition should not sway this Court's attention from a central fact of singular, dispositive importance: Plaintiff had a contract with only one insurer, Twin City Fire Insurance Company. As acknowledged by the FAC, Twin City is a wholly owned subsidiary of HFIC, which is itself a wholly owned subsidiary of HFSG. These parent/subsidiary relationships do not provide a basis for jurisdiction or liability. Plaintiff's Opposition seeks to avoid dismissal through factual assertions outside the face of the FAC, and by repeating its generalized, undifferentiated

1

allegations against "The Hartford" and "Defendants." The Opposition does nothing to support this Court's exercise of jurisdiction – either subject matter or personal – over HFSG and HFIC.

Plaintiff lacks Article III standing to bring claims for breach of contract or declaratory judgment against companies that were strangers to its contract with Twin City. Black Magic argues that the FAC's references to "the Hartford" or "Defendants" "give rise to genuine issues of material fact as to whether these entities are in privity with Black Magic." Dkt. 21 (Opp. at 8). Not so. The Policy – which was attached to the Opposition – unequivocally demonstrates that it is between Black Magic, as the insured, and Twin City, as the insurer. The Policy does not contain a single reference to the Non-Writing Defendants. The phrase "The Hartford" does not refer to HFSG, HFIC, or any specific Hartford entity; it is simply a trade name used by all Hartford entities. Dkt. 14 (Mot. at 14).

Plaintiff's Opposition also presents no basis upon which this Court may exercise personal jurisdiction over HFSG and HFIC. The Opposition attempts to impute the contacts of Twin City to HFSG and HFIC based on purported assertions of control, but the FAC contains no allegations whereby this Court might disregard the corporate separateness of these distinct entities. Similarly, the purported interactions between HFSG/HFIC and the South Carolina Department of Insurance do not support specific jurisdiction over these entities, as they are not related to this case. This is a bilateral dispute between an insured and its insurer. That other entities may have generated forms, or fulfilled regulatory requirements, does not make them parties to this contract.

This Court should deny Plaintiff's request to keep these extraneous parties in this case, and deny its alternative request to initiate jurisdictional discovery. No amount of discovery will make HFSG or HFIC parties to Plaintiff's contract with Twin City. Dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

II. **ARGUMENT**

    A. **Plaintiff Fails to Address Its Undifferentiated Allegations Against the Non-Writing Defendants.**

The Opposition offers no justification for the FAC's imprecise pleading, which lumps distinct corporate entities together under common monikers such as "Defendants" and "The Hartford." Plaintiff cites numerous instances where the FAC, the Policy, and the denial letters refer to "The Hartford." Plaintiff argues that these references mean that HFSG and HFIC were contracting entities and involved in the operative facts supporting Plaintiff's claim. Dkt. 21 (Opp. at 1-6).

Nowhere does the FAC define HFSG and HFIC as "The Hartford," nor could it. "The Hartford" is a trade name, not a company – a fact made clear both in public filings and on the thehartford.com website, which Plaintiff has cited in its FAC and the Opposition. *See* Ex. A, HFSG Form 10-K for fiscal year ended December 31, 2019 ("HFSG 10-K") at 6.[1] As HFSG's 10-K states:

> The Hartford Financial Services Group, Inc. (together with its subsidiaries, 'The Hartford', the 'Company', 'we', or 'our') is a holding company for a group of subsidiaries that provide property and casualty ('P&C') insurance…. As a holding company, The Hartford Financial Services Group, Inc. is separate and distinct from its subsidiaries and has no significant business operations of its own.

HFSG and HFIC are separate and independent companies. Dkt. 11 (FAC ¶¶ 2-5). While the FAC alleges that these companies issue "Spectrum Business Owner's" policies, it does not claim that they issued Black Magic's Policy. *Id.* ¶ 27. Plaintiff admits that HFSG is not registered or licensed to sell insurance in South Carolina and does not do so. *Id.* ¶ 2. Instead, Plaintiff admits

---

[1] The Court can consider the Form 10-K on this Motion to Dismiss. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The complete Form 10-K can be found at The Hartford Insurance, *Investor Relations* – Financial Information: SEC Filings, https://ir.thehartford.com/financial-information/sec-filings/default.aspx (last visited August 14, 2020).

3

that the "insurer" on its Policy is Twin City. Dkt. 21 (Opp. at 9). Neither the Opposition nor the FAC makes any specific allegations of conduct by the Non-Writing Defendants with respect to Black Magic's Policy, or explain how any entity other than Twin City could breach a claim for coverage on a policy issued by Twin City. Plaintiff's allegations about "The Hartford" simply do not satisfy Fed. R. Civ. P. 8(a). Dkt. 14 (Mot. at 7).

### B. Plaintiff Lacks Article III Standing to Assert Its Breach of Contract and Declaratory Judgment Claims Against the Non-Writing Defendants.

1. <u>The FAC and the Attachments to the Opposition Conclusively Establish that the Contractual Insurance Relationship Is Between Twin City and Black Magic.</u>

There can be no dispute that Twin City was the only insurer which was a party to Plaintiff's insurance contract. The insurance contract clearly lists Twin City as the insurer and Black Magic as the insured. Dkt. 21-1 (Opp. at Exhibit A, at 16). It makes no reference to HFSG or HFIC. *Id.* Plaintiff admits as much in its Opposition, Dkt. 21 (Opp. at ¶ 9), but argues that it believed that "The Hartford" was its insurer. *Id.* Plaintiff's subjective belief about the parties to its contract is irrelevant[2], and does not establish mutuality of obligation. Moreover, where, as here, the contract contradicts the allegations of the pleading, the contract must govern. *See Rock v. Solar Rating & Certification Corp.*, No. 8:17-CV-3401-DCC-JDA, 2018 WL 3750617, at *5 (D.S.C. July 23, 2018), *report and recommendation adopted*, No. 8:17-CV-3401-DCC, 2018 WL 3745057 (D.S.C. Aug. 7, 2018); *Morris v. Auto-Owners Ins. Co.*, No. 3:16-CV-00880-JMC, 2016 WL 7473430, at *5 (D.S.C. Dec. 29, 2016).

---

[2] *See, e.g., Szynkowicz v. Bonauito-O'Hara*, 170 Conn. App. 213, 224 (Conn. 2017) (finding that plaintiff's subjective belief that defendant was a party to alleged dual agency agreement did not establish privity when the clear language of contract showed lack of privity); *Perkins v. Hicks*, No. 02-17-00227-CV, 2018 WL 3968489, at *4 (Tex. App. Aug. 16, 2018), *reh'g denied* (Sept. 20, 2018) (holding assertion of privity with party, despite evidence of contract with a different party, based on subjective belief was conclusory and not enough to raise a fact issue)

The Fourth Circuit has held that there is no contractual privity between a parent company, like HFSG and HFIC, and an insured of its subsidiary, like Twin City, based on mere references to the company in correspondence. *See Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 603 (4th Cir. 2002) (affirming summary judgment rejecting that parent corporation was a proper party to litigation because its logo appeared on the claim denial letters and the declarations page of the insured's policy). Plaintiff's Opposition points to no case law that modifies or alters this Fourth Circuit precedent, or otherwise supports its argument that the use of a trade name can make non-contracting entities liable for breach of a contract.

Plaintiff argues that it needs discovery to determine the proper parties, and that this is a complex issue. Not so. The issue is quite simple. The contract identifies the contracting parties: Plaintiff and Twin City. No discovery will rewrite the contract.[3]

    2.    <u>Because There Is No Contractual Relationship Between Plaintiff and the Non-Writing Defendants, Plaintiff Does Not Have Standing to Seek Declaratory Relief Under the Policy as to the Non-Writing Defendants.</u>

Plaintiff offers no legal support for its claim that it can sue the Non-Writing Defendants for a declaration of rights under a contract to which they are not parties. Dkt. 21 (Opp. at 11-13). No such authority exists. The Fourth Circuit has held that a declaratory judgment claim cannot be asserted on its own, and since the Non-Writing Defendants are not parties to a contract with Plaintiff, Plaintiff's failure to state a claim for breach of contract means that its declaratory judgment claim must be dismissed as well. *See, e.g. CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55-56 (4th Cir. 2011); Dkt. 14 (Mot. at 15-16).

---

[3] The Court can consider the Policy not only because it was attached to the Opposition but because it is embraced by the FAC. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

HFSG and HFIC are not interested and necessary parties simply because their standardized policy forms are at dispute here. Dkt. 21 (Opp. at 13, n.3). The fact that neither of the Non-Writing Defendants have actually claimed an interest in this action alone is sufficient grounds to deny joinder under Rule 19. *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 93 (4th Cir. 2005) (affirming district court's decision that because absent party "had not claimed an interest in the federal action," joinder was not required under Rule 19(a)). Furthermore, because Plaintiff and Twin City are the only two parties to the contract at dispute, not joining HFSG and HFIC will not affect their ability to protect any interests they may have, nor will Black Magic be subject to any inconsistent obligations. *See Nationwide Mut. Ins. Co. v. Ruff*, No. CA 0:11-1011-CMC, 2011 WL 2491345, at *3 (D.S.C. June 22, 2011) (refusing to join to action as a necessary party insurer not party to the insurance contract). The only party Black Magic may recover from under its insurance contract is Twin City, the sole insurer.

Courts have also rejected Plaintiff's argument that its declaratory judgment claim should survive because Plaintiff seeks to represent a putative class united by the same policy forms and against the same defendants. Dkt. 21 (Opp. at 14). In *Mahon v. Ticor Title Ins. Co.*, the Second Circuit rejected this exact attempt by a plaintiff to establish standing by seeking to represent a similar class of policyholders. 683 F.3d 59 (2d Cir. 2012). There, the court affirmed that, regardless of an attempt to represent a class, a plaintiff must demonstrate that it has "suffered a distinct and palpable injury to [her]self." *Id.* at 64 ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." (*quoting Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976)).

Plaintiff's attempt to create standing based on the "common thread" of the Spectrum Business Owner's Policy (Dkt. 21 (Opp. at 14)) is squarely at odds with the constitutional requirement that standing can only exist when there is a "distinct and palpable injury" to each individual plaintiff. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91(1979). That other insureds might have Spectrum policies from HFIC, for example, does not give Plaintiff standing to sue the Non-Writing Defendants which have caused it no injury.

      **C.**     **Plaintiff Shows No Basis for Personal Jurisdiction.**

Plaintiff recognizes that it must make a *prima facie* showing that the Court has personal jurisdiction over the Non-Writing Defendants. Dkt. 21 (Opp. at 14-15). Plaintiff argues that (1) the Court can impute the contacts of Twin City to the Non-Writing Defendants based on the control that those entities exercise over Twin City and (2) the Court has jurisdiction over the Non-Writing Defendants based on their interactions with the South Carolina Department of Insurance. Neither argument has merit.

          1.     <u>Plaintiff Has Failed to Demonstrate that Twin City is an Alter Ego of HFSG or HFIC.</u>

Plaintiff argues that the contacts of Twin City can be imputed to HFSG and HFIC, based on the control they exercise over Twin City. Dkt. 21 (Opp. at 17). But the FAC has not set forth facts that would allow the Court to disregard the corporate separateness of these distinct entities.

South Carolina courts consistently have recognized that it is difficult to plead that an entity is an alter ego. *J.R. v. Walgreens Boots All., Inc.*, No. 2:19-CV-00446-DCN, 2020 WL 3620025, at *6 (D.S.C. July 2, 2020) (holding that the lack of evidence to suggest that defendants failed to observe corporate formalities alone was fatal to alter ego argument); *Builder Mart of Am., Inc. v. First Union Corp.*, 349 S.C. 500, 511 (S.C. Ct. App. 2002), *overruled on other grounds in Farmer v. Monsanto Corp.*, 353 S.C. 553 (S.C. 2003) ("It is essential that all four factors be present with

7

sufficient factual specificity to confer jurisdiction on [ ] courts."). Courts will only pierce the corporate veil in rare circumstances. *See Gray v. Riso Kagaku Corp.*, 82 F.3d 410 (4th Cir. 1996) (affirming refusal to pierce corporate veil despite parent corporation's cash infusions to subsidiary, overlapping boards, parent's control over some aspects of subsidiaries' operations, and other factors); *ScanSource, Inc. v. Mitel Networks Corp.*, No. 6:11-CV-00382-GRA, 2011 WL 2550719, at *6 (D.S.C. June 24, 2011) (rejecting claim of alter ego where parent served as a guarantor to its subsidiary, shared the same payment processing center, employed some of the same executives, and listed subsidiaries as contacts on its website).

In deciding whether an entity is an alter ego, South Carolina courts look to "(1) common ownership, (2) financial independence, (3) degree of selection of executive personnel and failure to observe corporate formalities, and (4) the degree of control over marketing and operational policies." *Builder Mart*, 349 S.C. at 511.[4] The FAC does not plead facts to meet these requirements. For example, as to lack of corporate formalities, Plaintiff does not plead that Twin City, HFSG, and HFIC have failed to observe corporate formalities, keep records, or share executives. Plaintiff has not pled that Twin City lacks financial independence. An allegation that Twin City is a subsidiary, by itself, will not support an inference of alter ego. *Carroll v. Smith–Henry, Inc.*, 281 S.C. 104, 106, 313 S.E.2d 649, 651 (S.C. Ct. App. 1984) ("Stock ownership alone ordinarily does not render a parent corporation liable for the contracts of its subsidiary irrespective of whether the subsidiary is wholly owned or only partially owned...."); *Jones ex rel. Jones v. Enter. Leasing Co.-Se.*, 383 S.C. 259, 261 (S.C. Ct. App. 2009).

---

[4] Plaintiff cites to *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (4th Cir. 1993) for the proposition that the Fourth Circuit looks to whether a parent corporate exerts "considerable control" over a subsidiary to find personal jurisdiction, but the legal formulation in *Mylan Labs* is inapposite here because it applied Maryland law. Because the dispute here is based in South Carolina, the test set forth in *Builder Mart* should be applied. 349 S.C. at 511.

8

Plaintiff claims that the Non-Writing Defendants are involved in developing, marketing, and selling their insurance policies in South Carolina through Twin City and other subsidiaries, and that the Non-Writing Defendants exercise "complete control over the claims process." Dkt. 21 (Opp. at 6, 10). But these assertions are not in the FAC, and even if they were, they would still not permit an inference of alter ego. *See Wright v. Waste Pro USA Inc.*, No. 2:17-CV-02654, 2019 WL 3344040, at *6 (D.S.C. July 25, 2019) (holding use of a common logo on a hiring website and testimony from employees that company and its subsidiaries held themselves out as a single entity were insufficient to warrant personal jurisdiction under alter ego theory); *Builder Mart*, 349 S.C. at 512–13 ("unified marketing and advertising and holding out to the public as a single entity, without more, [is] insufficient to confer jurisdiction."). Twin City, the only entity to have issued a policy, is the only entity that could have an obligation of payment.

      2.      <u>Interactions Between the Non-Writing Defendants and the South Carolina Department of Insurance Do Not Permit the Exercise of Personal Jurisdiction.</u>

In support of its claim of personal jurisdiction, Plaintiff looks to the Non-Writing Entities' purported interactions with the South Carolina Department of Insurance. Dkt. 21 (Opp. at 18). The Opposition contends that the Non-Writing Defendants met with the South Carolina Department of Insurance, and submitted the paperwork necessary to obtain approval of relevant insurance policies. Dkt. 21 (Opp. at 4-6). These assertions, which do not appear in the FAC, do not meet Plaintiff's burden.

First, the documents cited as evidence of regulatory filings by the Non-Writing Defendants do not actually support Plaintiff's assertions. The Explanatory Memorandum (Dkt. 21-3 (Opp. at Exhibit C)), as well as the Spectrum Business Owner's Policy forms to which the Explanatory Memorandum refers (Dkt. 21-4 (Opp. at Exhibit D)), both list the responsible company as

9

"Hartford Underwriters Insurance Company." Neither identifies HFSG or HFIC as the filing company or the company seeking approval.[5]

Second, even if the Non-Writing Defendant had made these filings, they would not establish general jurisdiction. Courts routinely find that registering to do business in a state or making a regulatory submission does not support the exercise of general jurisdiction. *Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) (deeming the "application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight" when determining personal jurisdiction); *Salley v. Heartland-Charleston of Hanahan, SC*, LLC, No. 2:10-CV-00791, 2010 WL 5136211, at *5 (D.S.C. Dec. 10, 2010) ("Fulfillment of paperwork to satisfy state regulation is insufficient to establish minimum contacts[.]"). Place of incorporation and principal place of business are the "paradigm fora" for general jurisdiction, neither of which are South Carolina for either Non-Writing Defendant. *See Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014). General jurisdiction outside of those locations exists only in the "exceptional case," which this certainly is not. *See id.*

Third, these filings and interactions also do not establish specific jurisdiction. Specific jurisdiction requires that the defendants' contacts with the forum state form the basis of the suit. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278-79 (4th Cir. 2009). The Non-Writing Defendants' purported contacts with South Carolina – securing regulatory approval for their insurance policies – have nothing to do with this specific coverage dispute between Black

---

[5] Black Magic attempts to link HFSG to these filings by citing the signature block of an HFSG employee who purportedly administered the filings. Dkt. 21 (Opp. at 6). The fact that an employee of HFSG may have pushed the submit button on a regulatory filing does not show that HFSG or HFIC had contacts with South Carolina sufficient to support general or specific personal jurisdiction. The only entity that issued the policy to Plaintiff was Twin City.

10

Magic and Twin City. Twin City issued the policy, and it is Twin City that has not paid under the policy.

### 3. The Court Should Deny Plaintiff's Request to Conduct Limited Jurisdictional Discovery.

As an alternative to denying the Defendants' Motion to Dismiss, Plaintiff requests jurisdictional discovery. Dkt. 21 (Opp. at 11, 20). Although this Court has broad discretion in resolving jurisdictional discovery problems (*Base Metal Trading, Ltd. v. OJSC*, 283 F.3d 208, 216 n.3 (4th Cir. 2002), Plaintiff has not presented any evidence that the Non-Writing Defendants have established minimum contacts with South Carolina such that the Court might exercise jurisdiction, or that they control Twin City to such a level as to subject them to specific jurisdiction. Meanwhile, the Non-Writing Defendants have readily demonstrated that both subject matter and personal jurisdiction are lacking. Allowing Plaintiff to conduct jurisdictional discovery would "only cost both parties time, money, and effort for what would merely delay the inevitable." *See ScanSource,* 2011 WL 2550719, at *6. Plaintiff's request for jurisdictional discovery should be denied.

**D.    Plaintiff Cannot State a Claim Against the Non-Writing Defendants Because They Do Not Have a Contract With Black Magic.**

Dismissal under Rule 12(b)(6) is proper because Plaintiff cannot set out a claim against either Non-Writing Defendant. Plaintiff's Opposition argues that "the documents at issue in this insurance coverage dispute give rise to a genuine issue of material fact whether HFSG and HFIC have a contractual relationship with Black Magic." Dkt. 21 (Opp. at 10). Not so. The documents identify only one insurer: Twin City. Dkt. 21-1 (Opp. at Exhibit A at 16); Dkt. 21-2 (Opp. at Exhibit B at 2). The Policy and the denial letter mention HFSG and HFIC zero times. Dkt. 21-1 (Opp. at Exhibit A); Dkt. 21-2 (Opp. at Exhibit B). They impose zero obligations on the Non-Writing Defendants. Absent any contractual liability, the claims against the Non-Writing Defendants should be dismissed for failure to state a claim.

### III.    CONCLUSION

For all of the foregoing reasons and others appearing on the record, Plaintiff's Amended Class Action Complaint should be dismissed in its entirety as to HFSG and HFIC.

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

 /s/ Kevin A. Hall
Kevin A. Hall (Federal Bar No. 5375)
kevin.hall@wbd-us.com
M. Todd Carroll (Federal Bar No. 9742)
todd.carroll@wbd-us.com
1221 Main Street, Suite 1600
Columbia, SC 29201
803.454.6504

And

Sarah D. Gordon
Anthony J. Anscombe *(pro hac vice forthcoming)*
Frank Winston *(pro hac vice forthcoming)*
STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue NW
Washington, D.C. 20036
Phone: (202) 429-3000
sgordon@steptoe.com
aanscombe@steptoe.com
*Attorneys for Defendants*

August 14, 2020