UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BLACK MAGIC, LLC d/b/a BLACK MAGIC CAFE, on behalf of itself and all others similarly situated,<br><br>                         Plaintiffs,<br>v.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC.; HARTFORD FIRE INSURANCE COMPANY; and TWIN CITY FIRE INSURANCE COMPANY,<br><br>                         Defendants. | Civil Action No. 2:20-cv-1743-BHH<br><br>**Opinion and Order** |

This matter is before the Court on Defendants The Hartford Financial Services Group, Inc.("HFSG") and Hartford Fire Insurance Company's ("HFIC") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (ECF No. 14.) For the reasons set forth in this Order, the motion is granted.

## BACKGROUND

Plaintiff Black Magic, LLC ("Black Magic") operates two restaurants in Charleston, South Carolina. On March 17, 2020, Governor Henry McMaster signed an Executive Order in response to the novel coronavirus (SARS-CoV-2) and the disease caused by this virus, COVID-19 (the "Virus"). The Executive Order, and other government regulations at the state and local level, had the effect of closing Black Magic for dine-in service. Black Magic alleges that it suffered business income losses as a result.

Defendant Twin City Fire Insurance Company ("Twin City") issued Spectrum

1

Business Owner's Policy, No. 22 SBA AD5441 DV, effective July 16, 2019 to July 16, 2020, to Black Magic (the "Policy"). A copy of the Policy is attached to HFSG and HFIC's (collectively "Non-Writing Defendants") motion to dismiss as Exhibit A.[1] (ECF No. 14-1.)

The Policy does not contain Form CP-01-40-07-06 ("EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA") (the "Virus Exclusion"), an exclusion commonly found in small business, commercial property insurance policies in South Carolina. (*Id.* ¶¶ 41–42.) The Virus Exclusion comprehensively bars coverage for virus-related claims, including business income interruption claims. Rather, the Policy contains Form SS-40-93-07-05 ("LIMITED FUNGI, BACTERIA, OR VIRUS COVERAGE") (the "Virus Coverage Form"). (*Id.* ¶ 43; ECF No. 14-1 at 133–135). The Virus Coverage Form provides coverage for certain virus related losses, including business income interruption claims. (Am. Compl. ¶ 48.) The Virus Coverage Form was included in the "Restaurant Stretch" (Form SS-04-11) purchased by Black Magic, a series of endorsements marketed as enhanced coverage for commercial property insurance. (Am. Compl. ¶¶ 30, 44.)

With respect to the Non-Writing Defendants, Black Magic alleges that "Twin City is a wholly owned subsidiary of HFIC, which is, in turn, a wholly owned subsidiary of HFSG." (Am. Compl. ¶ 5.) It further alleges that Twin City, HFSG, and HFIC are Indiana, Delaware, and Connecticut corporations, respectively. (*Id.* ¶¶ 2–4.) Thus, the amended complaint recognizes that the three Defendants are distinct corporate entities. It does not include any factual allegations designed to show that corporate separateness should be disregarded. Black Magic concedes that Twin City is listed as the insurer on the Policy's

---

[1] A court may properly consider documents attached to a motion to dismiss without converting the motion into one for summary judgment, as long as the documents are integral to the complaint and they are authentic. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The authenticity of the Policy attached to the instant motion to dismiss is not challenged.

2

Spectrum Policy Declarations page (*id.* ¶ 31), but cites references to "The Hartford" in the Policy and related letters to support its allegation that it believed "The Hartford" was its insurer (*id.* ¶¶ 32–37).

Black Magic submitted a claim under the Policy for its alleged business income losses due to the Virus and the claim was denied. The denial letter stated it was from "The Hartford Cat Claim Office" and contained a Hartford logo. (*Id.* ¶ 50.) Black Magic filed the instant lawsuit against Twin City, HFIC, and HFSG, asserting breach of contract and declaratory judgment claims. Black Magic seeks to represent a class of similarly situated policy holders who (1) purchased a "Spectrum Business Owner's Policy" with the Virus Coverage Form and (2) were denied business income interruption claims due to the Virus.

HFSG and HFIC filed their motion to dismiss for lack of standing, lack of personal jurisdiction, and failure to state a claim on July 14, 2020. (ECF No. 14.) The motion is fully briefed, the matter is ripe for disposition, and the Court now issues the following ruling.

## LEGAL STANDARDS

**Subject Matter Jurisdiction**

When a party challenges the factual basis for a federal court's subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of proving the district court possesses subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982)). In considering a Rule 12(b)(1) motion to dismiss, the district court is to regard the pleadings as mere evidence on the issue of subject matter jurisdiction and may consider evidence outside the pleadings without converting the proceeding into

3

one for summary judgment. *Id.* (citing *Adams*, 697 F.2d at 1219; *Trentacosta v. Frontier Pacific Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)). Federal district courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. 28 U.S.C. § 1332(a)(1). However, even if the jurisdictional requirements of complete diversity and amount in controversy are satisfied, subject matter jurisdiction is lacking if a plaintiff's allegations do not demonstrate Article III standing to sue the defendant. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (affirming dismissal where plaintiff failed to set forth allegations in its complaint sufficient to establish standing). The "irreducible constitutional minimum of" of Article III standing has three elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

**Personal Jurisdiction**

When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). If the court addresses the issue of jurisdiction on the basis of pleadings and supporting legal memoranda without an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir. 1989). In deciding such a motion, "the court must construe all relevant pleading allegations in the light most

favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* at 676.

Specific jurisdiction over a cause of action arising from a defendant's contacts with the State is granted pursuant to South Carolina's long arm statute, S.C. Code Ann. § 36-2-803. South Carolina's long-arm statute has been construed to extend to the constitutional limits imposed by the due process clause of the U.S. Constitution. *Young v. Jones*, 816 F. Supp. 1070, 1073 (D.S.C. 1992) (citing *Triplett v. R.M. Wade & Co.*, 200 S.E.2d 375, 379 (S.C. 1973)). The specific jurisdiction inquiry under the due process clause "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (quotation marks omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. "[T]he relationship [between the suit-related conduct and the forum] must arise out of contacts that the 'defendant [*it*]*self*' creates with the forum State." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

A corporation is subject to general personal jurisdiction where its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The "paradigm" forums for general jurisdiction are a corporation's place of incorporation and principal place of business. *Id.* at 137. General jurisdiction over a corporation in a forum other than

its formal place of incorporation or principal place of business would be an "exceptional case." *See id.* at 139 n.19 (stating the possibility of such an exceptional case is not foreclosed, but noting that the case under consideration presented no occasion to explore the question).

**Failure to State a Claim**

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) "challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556)). Although the allegations in a complaint generally must be accepted as true, that principle "is inapplicable to legal conclusions," and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citations and quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it

6

has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).

## DISCUSSION

The Non-Writing Defendants argue that the claims against them fail for one fundamental reason: neither corporation is a party to the insurance contract at issue. They contend: (1) Black Magic lacks Article III standing to sue HFSG and HFIC with respect to this dispute because it has no injury fairly traceable to them; (2) the Court does not have personal jurisdiction over these companies; and (3) the amended complaint fails to state a claim because the Non-Writing Defendants have no obligations under an insurance contract to which they are not parties.

At the outset, the Court notes that Black Magic's amended complaint lumps all Defendants together in its substantive allegations regarding breach of contract and purportedly improper denial of coverage. (*See* ECF No. 11.) It makes no allegations of specific conduct by HFSG or HFIC with respect to Black Magic. The amended complaint also makes no allegations regarding the existence of a specific corporate entity known as "The Hartford." (*See id.*)

### A. Subject Matter Jurisdiction

The Court finds that Black Magic lacks Article III standing to sue the Non-Writing

Defendants, neither of which is an "insurer" under the Policy. (*See* ECF No. 14-1 at 16 (listing Twin City as the insurer).) Black Magic's amended complaint fails to demonstrate standing as to the Non-Writing Defendants because the alleged injury in fact—to wit, denial of coverage for business income interruption due to the Virus—is *not* fairly traceable to the challenged conduct of HFSG and HFIC. *See Spokeo*, 136 S. Ct. at 1547. Black Magic cannot demonstrate any injury fairly traceable to the conduct of the Non-Writing Defendants because it has no contract with them and has not alleged any other harm attributable to them. *See Meyer v. McMaster*, 394 F. Supp. 3d 550, 561–62 (D.S.C. 2019) (holding automobile owner failed to demonstrate that any alleged injury he suffered from automobile manufacturer's decision not to open dealerships in South Carolina was fairly traceable to South Carolina governor and attorney general's actions and dismissing for lack of standing).

The Fourth Circuit has stated that a plaintiff cannot sue insurers with which it has no contract. *See, e.g.*, *S. States Life Ins. Co. v. Matthews*, 205 F.2d 830, 831–33 (4th Cir. 1953) (holding no contract of insurance existed after previous policy lapsed and was not renewed, precluding liability for insurer); *see also Dash v. FirstPlus Home Loan Owner Tr. 1996-2*, 248 F. Supp. 2d 489, 503 (M.D.N.C. 2003) ("Absent a contractual relationship with any of [d]efendants, [p]laintiffs cannot possibly show that their injuries, such as they have suffered, are traceable to the conduct of any of [d]efendants, nor can they possibly show that a judicial ruling in their favor would likely redress their injuries."). The Non-Writing Defendants have no contractual liability to Black Magic and the traceability requirement for standing has not been met. Twin City issued the policy and only Twin City could deny coverage. Accordingly, the motion to dismiss under Rule 12(b)(1) is granted.

### B. Personal Jurisdiction

The Court finds that Black Magic has not demonstrated that the Non-Writing Defendants are subject to general or specific personal jurisdiction in South Carolina. First, neither HFIC nor HFSG is subject to general personal jurisdiction in this State. Neither corporation is incorporated in South Carolina and neither maintains its principal place of business here. *See Daimler*, 571 U.S. at 137 (stating formal place of incorporation and principal place of business are the paradigmatic forums for general jurisdiction). Black Magic has not even begun to show that the Non-Writing Defendants have such "continuous and systematic" contacts with South Carolina as to render them "essentially at home" in this State. *See id.* at 138–39. Thus, general jurisdiction is a non-starter in this action.

Second, the amended complaint does not show that Non-Writing Defendants are subject to specific personal jurisdiction in South Carolina. Neither HFSG nor HFIC issued the Policy to Black Magic. Despite Black Magic's contention to the contrary, it was Twin City, the issuing insurer, that denied Black Magic's claim for business interruption income losses. The amended complaint alleges that "Twin City is a wholly owned subsidiary of HFIC, which is, in turn, a wholly owned subsidiary of HFSG." (Am. Compl. ¶ 5.) However, a parent company is not subject to personal jurisdiction in a particular forum merely due to its relationship with a subsidiary. *See, e.g.*, *Gray v. Riso Kagaku Corp.*, 82 F.3d 410 (4th Cir. 1996) ("[T]he mere fact that [a defendant's] subsidiaries do business in South Carolina does not confer personal jurisdiction over [the defendant]."). Black Magic argues that Twin City's contacts with South Carolina can be imputed to HFSG and HFIC, because

9

they exercise "complete control" over Twin City and its claims process. (ECF No. 21 at 17.) The argument is conclusory. The amended complaint does not allege facts that would allow the Court to disregard the corporate separateness of these distinct entities. South Carolina courts have consistently recognized that it is difficult to plead that one entity is the alter ego of another and Black Magic has not set forth facts to meet the elements of such a claim. *See J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 549 (D.S.C. 2020) (stating that the lack of evidence to suggest that defendants failed to observe corporate formalities alone was fatal to alter ego argument). Accordingly, HFSG and HFIC are not subject to personal jurisdiction based on Black Magic's allegation that they have a parent-subsidiary relationship with Twin City.

Moreover, Black Magic's allegations do not suffice to establish that the presence in the Policy and in claims correspondence of the phrase "The Hartford" and/or the Hartford logo (Am. Compl. ¶¶ 32–36, 50–52) is anything more than a trade name used by Hartford-related entities. The gravamen of the allegations in the amended complaint arises from the denial of Black Magic's claim for losses related to the Virus. Twin City, the only entity that issued the Policy, is the only entity that could potentially have an obligation of payment and therefore the entity that denied the claim. Thus, Black Magic's averments are insufficient to show that HFSG and HFIC established the minimum contacts with South Carolina necessary to confer specific jurisdiction under the State's long arm statute.

Finally, Black Magic requests jurisdictional discovery as an alternative to dismissal. (ECF No. 21 at 11, 20.) Although this Court has broad discretion over whether or not to permit jurisdictional discovery, *see Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002), Black Magic has not presented

any evidence that the Non-Writing Defendants have established minimum contacts with South Carolina or that they control Twin City in a manner and to a degree that could subject them to specific jurisdiction. Meanwhile, the Non-Writing Defendants have readily demonstrated that both subject matter and personal jurisdiction are lacking. Allowing Black Magic to conduct jurisdictional discovery under the circumstances would be a waste of resources for the Court and the parties. Therefore, Black Magic's request for jurisdictional discovery is denied.

In summary, Black Magic has failed to allege a *prima facie* basis for personal jurisdiction over the Non-Writing Defendants. *See Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 410 (D.S.C. 2012) (stating a plaintiff bears the burden of establishing through "specific facts" that personal jurisdiction exists over a nonresident defendant). Therefore, the claims against HFSG and HFIC are subject to dismissal for lack of personal jurisdiction under Rule 12(b)(2).

### C.  Failure to State a Claim

Even if this Court possessed subject matter and personal jurisdiction over the Non-Writing Defendants, Black Magic's claims against them would be dismissed for failure to state a claim. Both causes of action in the amended complaint—declaratory judgment and breach of contract—are premised on the existence of a contractual relationship between the Non-Writing Defendants and Black Magic. (*See* Am. Compl. ¶¶ 79–92.) However, as explained above Twin City, not the Non-Writing Defendants, agreed to insure Black Magic. (*See* ECF No. 14-1 at 1 ("Writing Company" is "Twin City Fire Insurance Company"), 16 (declarations page listing "Insurer" as "Twin City Fire Insurance Company"), 175 (same), 190 (extension schedule listing "Carrier" as "Twin City Fire

Insurance Company").) The Policy never mentions HFSG or HFIC.

The Non-Writing Defendants cannot be held liable for breaching a contract to which they are not a party. *See Murphy v. Jefferson Pilot Commc'ns Co.*, 657 F. Supp. 2d 683, 693 (D.S.C. 2008) ("Only parties to a contract may be sued for a breach of contract cause of action."); *see also Winkler v. Hartford Fin. Servs. Grp.*, No. 2:10-cv-02222-RLH, 2011 WL 1705559, at *2 (D. Nev. May 3, 2011) (dismissing claims against HFSG because it was not the insurer).

Black Magic's allegations regarding the phrase "The Hartford," the Hartford logo, and other references to "Hartford" in the Policy and related documents, even when considered in the light most favorable to Black Magic, are insufficient to show that Black Magic had a contractual relationship with HFSG and HFIC. Notably, the amended complaint does not include any allegation that "The Hartford" is the same entity as HFSG or HFIC, as opposed to simply a trade name. Black Magic alleges that it thought "The Hartford" was its insurance company (Am. Compl. ¶ 37), but Black Magic's subjective belief about the correct name/identity of its insurer is irrelevant to whether HFSG or HFIC is a party to the Policy. With respect to an alleged breach of an insurance contract, Black Magic must state a claim against an actual legal entity that is party to the contract, which in this case is Twin City alone.

The same is true regarding Black Magic's declaratory judgment claim. Since neither HFSG nor HFIC is a party to the Policy, they have no obligations under it. There being nothing "to declare" as to either Non-Writing Defendant, Black Magic has failed to state a claim for declaratory judgment against them. *See, e.g.*, *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011) ("[The Declaratory Judgment Act]

is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights. . . . Here, [plaintiff]'s substantive claims fail. Accordingly, so must its Declaratory Judgment Act claim."). Because Black Magic has failed to state a claim against the Non-Writing Defendants for breach of contract, it also cannot assert a freestanding declaratory judgment claim against them. Accordingly, the claims against HFSG and HFIC are subject to dismissal for failure to state a claim under Rule 12(b)(6).

## **CONCLUSION**

For the reasons set forth above, Defendants The Hartford Financial Services Group, Inc. and Hartford Fire Insurance Company's motion to dismiss (ECF No. 14) is GRANTED, and these Defendants are dismissed from this action. Accordingly, the only remaining Defendant is Twin City Fire Insurance Company and Black Magic's South-Carolina-based claims will proceed against Twin City alone.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

March 12, 2021
Charleston, South Carolina